CIVIL ACTION NO. 10-210-DLB-JGW

WILLIAM EUBANK                                                     PLAINTIFF

vs.                    MEMORANDUM OPINION AND ORDER

OFFICER DENNIS WESSELER, ET AL.                          DEFENDANTS

*     *     *     *     *     *     *

After his arrest for assault in the fourth degree on November 15, 2009, Plaintiff
William Eubank ("Eubank") commenced this § 1983 action against Officer Dennis
Wesseler, a police officer with the Covington Police Department, and Geri Eubank ("Geri"),
his soon-to-be ex-wife, alleging a violation of his Fourth Amendment right to be free from
wrongful arrest.  Two months after the Complaint was filed, the Court entered an Agreed
Order signed by the parties dismissing the § 1983 claim against Geri Eubank. (Doc. # 9).
Against Officer Wesseler, Plaintiff has also raised a federal claim of malicious prosecution
and a state law claim for abuse of process.  Against Geri Eubank, Plaintiff has raised only
state law claims of malicious prosecution and abuse of process.

The matter is before the Court on Defendant Dennis Wesseler and Defendant Geri
Eubank's motions to dismiss (Docs. # 10, 11).  Oral Argument was held on August 18,
2011.  Charles Lester appeared on behalf of Plaintiff; Alex Mattingly appeared on behalf
of Defendant Dennis Wesseler; and Bob Lotz appeared on behalf of Defendant Geri
Eubank, who was also present.  The matter is now ripe for review.  For the reasons set
forth below, because Officer Wesseler had probable cause to arrest Plaintiff Eubank he is

entitled to qualified immunity, and because the Court declines jurisdiction over the remaining state law claims both Defendant Wesseler and Defendant Geri Eubank's motions to dismiss (Docs. # 11, 12) are **GRANTED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit arises from Eubank's arrest for fourth-degree assault on November 15, 2009, after he and his wife, Geri Eubank, were embroiled in a domestic dispute.  Geri had two children from a previous marriage at the time she married Plaintiff, and Eubank had at least one child from a previous marriage.  Once married, the two had a daughter together who was approximately sixteen months at the time of Plaintiff's arrest.

Before leaving his house on Sunday, November 15, 2009, to grocery shop and volunteer as a Court Appointed Special Advocate (CASA), he instructed his stepson to take out the garbage.  This requires taking the garbage to the end of the Eubanks' driveway, which is located more than a mile from their home.  Once home that evening, Eubank noticed the garbage had been taken out, but later learned from Geri that she performed the task while Plaintiff's stepson studied for a Spanish exam.  When Eubank encountered his stepson playing video games instead of studying, he proceeded upstairs to suggest that Geri have a talk with him.  Instead of speaking with her son directly, Geri had her daughter tell him to quit playing video games.

Dismayed by his wife's handling of the situation, he verbally expressed his displeasure which ignited a confrontation between the two that quickly escalated.  Geri was defensive and threatened to take their young daughter and prevent Eubank from ever seeing her again.  Plaintiff was holding their daughter at the time and Geri demanded that

he hand her over.  In an effort to comply with Geri's demand, he began walking toward her at which point she leapt toward them.  Plaintiff extended his arm out straight to stop her.  According to Plaintiff, Geri grabbed his hand and their fingers interlocked.  Once he was able to free his fingers, he began walking away.  Geri then came up behind Plaintiff and tried to wrestle their daughter from him.  In fear for his daughter's safety, Plaintiff handed the infant over.

Not surprisingly, the police report—authored by Defendant Wesseler after interviewing Geri—recounts the domestic altercation a bit differently.[1]  Wesseler reports that Geri complained her husband began to verbally abuse her after discovering his stepson failed to take out the garbage.  Eubank allegedly threatened to physically harm Geri and as the fight escalated, he grabbed her left arm and bent her fingers backward in an unnatural position causing her injury; while in this position, Plaintiff allegedly forced her down on a couch.  According to Wesseler's report, Geri reported that her husband "caused physical injury . . . and made threats of physical harm."  (Doc. # 11, Ex. A).  After this altercation, Geri rounded up her three children, including the daughter she had in common with Eubank, and left their house.

Upon leaving, Geri called Eubank's older daughter with whom he has a poor relationship.  Plaintiff's daughter and her husband—Independence police officer Tony Hill—met Geri at the Quick Mart located at Hands Pike and KY 17.  According to the Complaint, it was Plaintiff's daughter that called the Covington police.  Upon Wesseler's

---

[1]Although before the Court on a motion to dismiss, Defendant Wesseler attached the police report to his motion to dismiss.  The Court discusses *infra* the propriety of considering this report at this stage of the litigation.

arrival at the Quick Mart, Hill identified himself as an off-duty Independence police officer. Geri recounted the domestic incident to Wesseler and at the end of her interview she requested that the police arrest Eubank.

Officer Wesseler requested back-up and proceeded to the Eubanks' residence. Upon arrival, the two officers questioned Eubank who explained his version of events. Wesseler then told Plaintiff that when a complaint of domestic violence is made someone "must go to jail." (Compl. ¶ 39). Plaintiff was then arrested without incident. While placing Eubank in the back of the police cruiser, the back-up officer said to Plaintiff that he did not think Plaintiff should be arrested, but that Officer Wesseler was insisting on it. The Complaint asserts that Officer Wesseler later "charged the Plaintiff [with violating] KRS 508.030, domestic violence, assault in the fourth degree." (*Id.* at ¶ 43).

Subsequent to Eubank's arrest, the Kenton County Attorney moved to amend the charges from assault to harassment and a bench trial was conducted on June 3, 2010. At the bench trial, the prosecutor again moved to amend the charges back to assault in the fourth degree and Eubank was found not guilty of that charge. After his acquittal, Plaintiff filed this lawsuit claiming wrongful arrest and malicious prosecution in violation of the Fourth Amendment.

## II.    ANALYSIS

### A.    Motion to Dismiss

#### 1.    Standard of Review

Federal Rule of Civil Procedure 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing a Rule 12(b)(6) motion to dismiss, this Court "must construe the complaint in a light most favorable to the plaintiff, and accept all of [the] factual allegations as true. When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor." *Block v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). The Court, however, is not bound to accept as true unwarranted factual inferences, *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987), or legal conclusions unsupported by well-pleaded facts. *Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947, 950 (6th Cir. 1990).

To survive a motion to dismiss, the complaint "does not need detailed factual allegations," *Twombly*, 550 U.S. at 555, but it must present "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. To satisfy this standard, the complaint must provide "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Essentially, the pleading standard Rule 8 announces does not require exhaustive factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

### 2. Consideration of Exhibits Not Attached to the Complaint

To his motion, Officer Wesseler attached the Covington Police report he prepared describing his interview with Geri and subsequent arrest of Plaintiff Eubank on November 15, 2009. (Doc. # 11 at Ex. A). He also attached a copy of the Covington Police

Department General Order 41.3 – Domestic Violence, which explains the department's arrest policy pertaining to complaints of domestic violence. (*Id.* at Ex. D). Plaintiff, in his response in opposition, argues Defendant's motion should be converted to one for summary judgment because Wesseler is seeking to have matters outside the pleadings considered, "none of which were contained in the Complaint." (Doc. # 17 at 19). At oral argument, however, Plaintiff's counsel conceded the Court could rely on the attached documents in adjudicating the motion. Although Plaintiff's counsel no longer objects, the Court must determine whether it may properly rely on the documents attached to Officer's Wesseler's motion to dismiss at this stage of the litigation.

Assessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). When resolving a motion to dismiss, then, a district court is limited to matters formally contained in the pleadings. However, "[i]f referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings." *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) (quoting *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999)); *see also Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)) (A court may consider "exhibits [attached to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein.").

In his Complaint, Plaintiff specifically references Officer Wesseler's police report stating, "Geri's son admitted to be unaware that the police report conflicted with his

statement. The police report *shows* that Defendant Geri only mentions that Mr. Eubank grabbed her left hand." (Compl. ¶ 97) (emphasis added). Plaintiff clearly references the report in the Complaint and it is central to the claims contained therein because it documents the facts and circumstances leading up to Plaintiff's arrest, which form the foundation of Wesseler's probable cause determination. Counsel's concession at oral argument lends further support that Wesseler's police report should be incorporated by reference. Counsel made clear that the report was referenced throughout both the Complaint and his response in opposition, explaining the report bolsters Plaintiff's claim that he was arrested without probable cause. Thus, the pleadings in this case properly include a copy of the original police report attached to Defendant Wesseler's motion to dismiss as it was incorporated by reference in Plaintiff's Complaint. *See Estep v. City of Somerset*, No. 10-286-ART, 2010 WL 5391909, at *1 n.1 (E.D. Ky. Dec. 21, 2010) (court considered a copy of a police reprimand that was simply referred to in the complaint as "a frivolous oral reprimand" without any further factual support).[2]

---

[2]Relying on *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001), counsel for Defendant Wesseler argued the Court could properly take judicial notice of Wesseler's police report because it is a public record. However, *Armengau* deals with judicial notice of facts contained in a plaintiff's appeal of his state court conviction; it simply did not address the propriety of judicially noticing a police report for purposes of 12(b)(6) adjudication.

The vast majority of cases hold that police reports do not constitute matters of public record appropriate for judicial notice. *See United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003); *Pina v. Henderson*, 752 F.2d 47, 50 (2d Cir. 1985); *Blackwell v. Kalinowski*, No. 08 C 7257, 2009 WL 1702992, at *2) (N.D. Ill. June 18, 2009) ("the factual allegations contained in the police report do not become matters of public record suitable for consideration on a motion to dismiss"); *Hodges v. Holiday Inn Select*, No. CV-F-07-615, 2008 WL 149139, at *3 (E.D. Cal. Jan. 14, 2008) ("the Police Report . . . is not a matter of public record."); *Standish v. Woods*, 2004 WL 1379466, at *3 (D. Or. May 10, 2004) ("while a court arguably may take judicial notice of the fact that there is a police report, it may not take judicial notice of any disputed facts contained in the report."). *But See Cobin v. Hearst-Argyle Tel.*, Inc., 561 F. Supp. 2d 546, (D.S.C. 2008) (court may properly take judicial notice of police report as a public record). Accordingly, the Court considers the police report because it was incorporated by reference into the body of Plaintiff's complaint, not because it takes judicial notice of the report as a public record.

The Court may also take judicial notice of "matters of public record" without converting a 12(b)(6) motion into one for summary judgment. *Wyser-Pratte Mgmt. Co., Inc., v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005); *Jackson v. Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *overruled in part on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508-514 (2002); *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997). Facts judicially noticed from a public record must be "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201; *see also Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005) ("[I]n order to preserve a party's right to a fair hearing, a court, on a motion to dismiss, must only take judicial notice of facts which are not subject to reasonable dispute.").

To his motion to dismiss, Defendant Wesseler attached a copy of the Covington Police Department's domestic violence policy, General Order 41.3, which indicates that arrest is the "preferred response" to incidents of domestic violence. (Doc. # 11, Ex. D). Without actually arguing that Covington's domestic violence policy does not qualify as a public record, Plaintiff makes the unhelpful observation that "not all . . . police policies are public records." (Doc. # 17 at 19). Counsel further fails to cite any case law in support of this proposition. The Court, by contrast, has found that many federal district courts, including some in the Sixth Circuit, have recognized police policies and manuals qualify as matters of public record. *See Leisure v. City of Cincinnati*, 267 F. Supp. 2d 848, 852 n.1 (S.D. Ohio 2003) (court took judicial notice of the city's police procedure manual as a matter of public record in adjudicating a motion to dismiss); *Driebel v. City of Milwaukee*, 298 F.3d 622, 631 n.2 (7th Cir. 2002) (The Milwaukee Police Department Manual "contains

the rules and regulations duly promulgated by the chief of police . . . and published for use in the normal course of business by the [MPD].  Thus, we may take judicial notice of any portions of the manual that are relevant to our analysis."); *Polnitz v. Peoria Cnty.*, No. 08-1035, 2009 WL 311157, at *2 (C.D. Ill. Feb. 4, 2009) (court judicially noticed the "Peoria County Jail Policies and Procedure Manual, which is a public record" in adjudicating defendants' motion to dismiss); *McGee v. City of Cincinnati Police Dep't*, No. 1:06-CV-726, 2007 WL 1169374, at *1 n.2 (S.D. Ohio April 18, 2007) (on a motion to dismiss the plaintiff's complaint, the court judicially noticed a police videotape of the incident in question).  Plaintiff, moreover, does not contest the accuracy of the attached policy; his counsel conceded at oral argument that the accuracy of the policy was not in question. Because General Order 41.3 is a longstanding policy observed by the Covington Police Department and is a matter of public record—the accuracy of which is not in dispute—it should properly be considered part of the pleadings even though it was not attached to the Complaint.

**B.**    **Section 1983 Claims Against Officer Wesseler in his Individual Capacity**

Plaintiff Eubank alleges his constitutional rights were violated when he was arrested on the evening of November 15, 2009, without probable cause and subsequently prosecuted for domestic violence.  Specifically, Plaintiff alleges wrongful arrest and malicious prosecution claims under § 1983.  Despite these assertions, Eubank cannot establish that Officer Wesseler lacked probable cause to arrest him, therefore, Defendant Wesseler is entitled to qualified immunity.

### 1. Qualified Immunity

"Qualified immunity is an affirmative defense that shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Estate of Carter v. Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The purpose of the doctrine is to ensure that insubstantial claims against government officials are resolved at the earliest possible stage in litigation." *Rondigo*, 641 F.3d at 681 (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The Sixth Circuit Court of Appeals considers a three-part analysis for determining whether a police officer is entitled to qualified immunity from claims asserted against him in his individual capacity. *See Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008), *cert. denied*, 554 U.S. 903, 128 S.Ct. 2938, 171 L.Ed.2d 865 (2008). This Court must determine "(1) whether a constitutional right was violated; (2) whether that right was clearly established and one of which a reasonable person would have known; and (3) whether the official's action was objectively unreasonable under the circumstances." *Id.* (citing *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999)); *see also Holzemer v. City of Memphis*, 621 F.3d 512, 519 (6th Cir. 2010).

A court should grant an officer qualified immunity if in viewing the facts favorably to the plaintiff, "an officer reasonably could have believed that the arrest was lawful." *Kennedy v. City of Villa Hills*, 635 F.3d 210, 214 (6th Cir. 2011). "In other words, an arresting agent is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed . . . in light of clearly established law and the information possessed at the time by the arresting agent" that the arrest was permitted under the law.

*Harris*, 513 F.3d at 511. Eubank bears the burden of demonstrating that qualified immunity is inapplicable. *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008). Accordingly, for Eubank's claims to survive, he must not only demonstrate that a constitutional violation occurred, but also that Wesseler is not entitled to qualified immunity.

### 2. Wrongful Arrest

Eubank's Fourth Amendment claim against Officer Wesseler hinges upon the legality of his arrest for domestic violence. "A person who has been the victim of an unlawful arrest or wrongful seizure under the color of law has a claim based on the Fourth Amendment guarantee that government officials may not subject citizens to searches or seizures without proper authorization." *Brooks v. Rothe*, 577 F.3d 701, 706 (6th Cir. 2009). An arrest, however, is constitutional if it is based upon probable cause. *Virginia v. Moore*, 553 U.S. 164, 177 (2008) ("A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment."); *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed."); *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003). Yet, "[t]he validity of the arrest does not depend on whether the suspect actually committed a crime." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). For Eubank's wrongful arrest claim to succeed, he must "prove that the police lacked probable cause," not that he was acquitted on the domestic violence charge of assault in the fourth degree. *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002), *cert. denied,* 537 U.S. 1191, 123 S. Ct. 1262, 154 L.Ed.2d 1024 (2003).

**I.** **Wesseler did not unlawfully arrest Plaintiff in violation of the Fourth Amendment because he had probable cause to believe Plaintiff committed a domestic violence offense**

Eubank has not alleged facts which, when viewed in the light most favorable to him, demonstrate Officer Wesseler violated a clearly established constitutional right. To determine whether an arrest was supported by probable cause, this Court must determine "whether, at the time of the arrest, the facts and circumstances within [the arresting officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent person to conclude that an individual either had committed or was committing an offense." *United States v. Torres-Ramos*, 536 F.3d 542, 555 (6th Cir. 2008) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)) (internal quotations omitted). To do so, requires this Court to examine the events leading up to the arrest and then to decide "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amounted to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). Simply put, the probable cause inquiry is a factually intensive one.

"Whether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law." *Kennedy*, 635 F.3d at 215 (quoting *DeFillippo*, 443 U.S. at 36). Eubank was arrested and later charged with fourth-degree assault, which is a Class A misdemeanor defined by Kentucky Revised Statutes section 508.030:

> (1) A person is guilty of assault in the fourth degree when: (a) He intentionally or wantonly causes physical injury to another person.

"Physical injury" is defined in KRS 500.080(13) as "substantial physical pain or any impairment of physical condition." Officer Wesseler, in his police report, indicates that he

effected an arrest of Eubank "on the word of the complainant and possible injury to her hand" (Doc. # 11, Ex. A at 3), which in the Sixth Circuit is sufficient to establish probable cause. *See Thacker v. City of Columbus*, 328 F.3d 244, 257 (6th Cir. 2003) (a victim's accusation that she has been abused is alone sufficient to establish probable cause to arrest the defendant for domestic violence); *Ahlers v. Schebil*, 188 F.3d 365, 370-71 (6th Cir. 1999) (a victim's accusation that she had been sexually assaulted by the plaintiff, standing alone, was sufficient to establish probable cause).

The Complaint alleges Officer Wesseler was the responding officer to the scene after the Covington Police Department received a domestic violence complaint. Wesseler met Geri at a Quick Mart, where he interviewed her and she indicated that Plaintiff—after becoming irate that his stepson failed to take out the garbage—grabbed her fingers and bent them backwards, "*causing pain*" and forcing her to the couch. (Doc. # 11, Ex. A) (emphasis added). This information, in itself, is enough to establish probable cause for domestic assault in the fourth degree. The statute requires only that a suspect "intentionally or wantonly cause[ ] physical injury to another," Ky. Rev. Stat. § 508.030, and the Sixth Circuit has made clear that credible testimony of the victim is sufficient to establish probable cause. The pain she experienced qualifies as physical pain as defined under the statute. Additionally, by bending her fingers backwards, Plaintiff likely impaired Geri's physical condition, that is, the use of her fingers. After all, KRS 500.080(13) requires *either* substantial physical pain *or* any impairment of physical condition. *Key v. Commonwealth*, 840 S.W.2d 827, 829 n.1 (Ky. Ct. App. 1992).

Plaintiff correctly points out that *Ahlers*' holding does not condone blind acceptance of eyewitness testimony; it is limited to the extent the testimony is credible. In other words,

eyewitness testimony will constitute sufficient probable cause "unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately described what [she] had seen, or was in some fashion mistaken regarding [her] recollection of the confrontation." *Ahlers*, 188 F.3d at 370. Thus, an officer will have probable cause to arrest only after he obtains reasonably reliable information that the suspect has committed a crime. *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 1999).

Here, there was no indication the information Geri provided should be discredited. With her three children in tow, she fled the scene of the incident, had a relative call the police, and when the responding officer arrived, indicated she was in pain after her husband bent her fingers backward in an unnatural position. Plaintiff argues that, as applied to this case, Wesseler fails the qualified immunity analysis because it is clearly established that "arresting an individual for a crime that requires proof of physical injury when there is none" violates the right to be free from wrongful arrest. (Doc. # 17 at 15-16). An officer, however, is not required to identify visible proof or present concrete evidence of a physical injury to satisfy a probable cause determination and lawfully arrest for a crime of domestic violence. The officer need only *reasonably believe* that the arrestee caused substantial physical pain or impairment of a physical condition to the complainant. That Geri later testified her injuries were minor, does not vitiate the officer's probable cause determination *at the time of arrest*. Nor does the absence of any bruising vitiate the legality of the arrest.

Plaintiff attempts to further undercut Geri's credibility by detailing a lengthy domestic history that involves alleged infidelity and previous domestic violence and child abuse

allegations against Geri's former husband. This information has no bearing on Officer Wesselers' on-site probable cause determination. Determining the probability of criminal activity is assessed based on an "examination of all the facts and circumstances *within an officer's knowledge at the time of an arrest*." *Crockett.*, 316 F.3d at 580 (6th Cir. 2003) (quoting *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999)) (emphasis in original). The Complaint simply does not allege that Officer Wesseler was privy to the lengthy domestic history between Plaintiff and his wife. Even if he had such knowledge at the time of Plaintiff's arrest, prior unsubstantiated complaints of domestic violence would not automatically extinguish the existence of probable cause, but would likely preclude sole reliance on the victim's complaint.

From the facts alleged in the Complaint, all Officer Wesseler knew at the time of arrest was that Geri Eubank reported her husband grabbed and bent her fingers backwards in an unnatural position causing pain. He was also aware that some of Geri's relatives were with her at the Quick Mart after the incident, one of whom was an off-duty Independence police officer and identified himself as such. These facts do not establish that Officer Wesseler ignored exculpatory evidence or incorrectly assessed the complainant's credibility. His determination to proceed to Eubank's residence to effect arrest was entirely reasonable in light of the facts known to him. The Court asks "whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed . . . after the fact." *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). Officer Wesseler gathered reasonably reliable information from eyewitness Geri, sufficient to make a probable cause determination consistent with *Ahlers* and *Thacker*. The Eubanks' unfortunate domestic

history is simply irrelevant to whether Officer Wesseler had probable cause to arrest on November 15, 2009.

Plaintiff also bemoans Officer Wesseler's less than exhaustive investigation of the incident. He asserts that Wesseler "failed to conduct an investigation despite two contrary versions of events." (Doc. # 17 at 11). Interestingly, however, the Complaint fails to even allege that Plaintiff gave a conflicting account *to Wesseler* of the events that evening. (Compl. ¶ 38) ("[T]wo Covington police officers arrived at the house, Mr. Eubank briefly explained what happened."). The Complaint itself may have recounted the evening's events as Plaintiff remembers them, but it fails to allege that Wesseler received conflicting information. Regardless, precedent is clear that once an officer has established probable cause no further duty to investigate exists. *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988) ("A policeman . . . is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause."); *see also Klein v. Long*, 275 F.3d 544, 551-52 (6th Cir. 2001) (explaining an officer need not interview an alleged offender where a victim claims she was abused if such an interview would, at most, produce an exculpatory denial of wrongdoing), *cert. denied*, 537 U.S. 819, 123 S. Ct. 95, 154 L.Ed.2d 26 (2002). In the absence of a reason to doubt the complainant, Officer Wesseler had no duty to investigate further before arresting Plaintiff.

Plaintiff also thinks it significant that Geri was "unable to produce any physical evidence of harm to her hands or body." (Compl. ¶ 75). Yet, neither the assault statute— let alone probable cause—require "physical evidence of harm." (*Id.*). As stated previously, "physical injury" under the statute encompasses not only visible injury, but physical pain.

Ky. Rev. Stat. 500.080(13). Evidence of physical harm such as medical records or a visible injury are simply not requirements under the statute as written. Plaintiff improperly conflates the probable cause analysis with a prima facie showing of criminal activity and his insistence that concrete evidence of physical injury was necessary to arrest is simply inaccurate. "[O]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." *Illinois v. Gates*, 462 U.S. 213, 235 (1983) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)); *see also United States v. Ferguson*, 8 F.3d 385, 592 (6th Cir. 1993) (en banc) ("Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.") (internal quotations omitted). Thus, to support a probable cause finding, Officer Wesseler need not have proof of each element of a domestic violence offense (i.e. in this instance physical injury), but "would have to believe that a probability existed" that Eubank committed an offense. *Thacker*, 328 F.3d at 256; *see also United States v. Strickland*, 144 F.3d 412, 415 (6th Cir. 1998) ("The Fourth Amendment does not require that a police officer *know* a crime occurred at the time the officer arrests . . . The Fourth Amendment, after all, necessitates an inquiry into probabilities, not certainty.") (emphasis in original).

The police report makes clear that such a probability existed. It states in relevant part that "on the word of complainant and possible injury to her hand" Eubank was arrested. (Doc. # 11, Ex. A at 3). Based on the evidence before him, Officer Wesseler reasonably believed there was a fair probability that Eubank committed a domestic violence offense which resulted in injury to his wife's hand; Geri's statement that her husband grabbed her and bent her fingers in an unnatural position causing pain is sufficient for probable cause purposes.

### a. Wesseler had probable cause to arrest for offenses related to assault in the fourth degree

Plaintiff's exclusive focus on lack of probable cause for the specific crime of assault in the fourth degree is similarly misplaced. Officer Wesseler is entitled to qualified immunity even *if* there was not probable cause to arrest on the charge of assault in the fourth degree, provided he had probable cause to arrest Plaintiff for a related offense. "[W]here no probable cause exists to arrest a plaintiff for a particular crime, but . . . probable cause exists to arrest that plaintiff for a related offense, the plaintiff cannot prevail in a suit alleging wrongful arrest brought pursuant to 42 U.S.C. § 1983." *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 676 (6th Cir. 2005) (citing *Avery v. King*, 110 F.3d 12, 14 (6th Cir. 1997)); *see Soltesz v. City of Sandusky*, 49 F. App'x 522, 526 (6th Cir. 2002) ("Although finding that the police officers had no probable cause to arrest Soltesz for threatening domestic violence, . . . the officers had probable cause . . . to detain [him] on charges of menacing . . . [and] [t]he fact that the police did not themselves contemplate a charge of menacing when arresting Soltesz does not so extinguish the probable cause for such an action that a Fourth Amendment violation results."). In other words, an officer need only have probable cause that an offense was committed.

Although not addressed by either party, the facts alleged in the Complaint and those contained in the police report suggest a probable cause finding for either a harassment or menacing charge under the Kentucky Revised Statutes. Under KRS 525.070 "[a] person is guilty of harassment when, with intent to intimidate, harass, annoy, or alarm another person, he or she: (a) Strikes, shoves, kicks, or otherwise subjects him to physical contact; (b) Attempts or threatens to strike, shove, kick, or otherwise subject the person to physical

contact." Even though Geri may not have sustained visible injury, she credibly reported an incident where her husband shoved her on the couch with the seeming intent to intimidate her after he became angry that his stepson had disregarded his direction to take out the garbage.

Moreover, Officer Wesseler had probable cause to believe that Plaintiff engaged in menacing. Under KRS 508.050 "[a] person is guilty of menacing when he intentionally places another person in reasonable apprehension of imminent physical injury." Geri Eubank fled her residence with her three children after her husband grabbed her hands—causing her pain—and pushed her down on a couch. From these facts, any reasonable officer would conclude that she fled because she feared the possibility of imminent physical injury. Accordingly, there are several related offenses for which Officer Wesseler had probable cause to arrest. That Plaintiff was ultimately charged with fourth degree assault and subsequently acquitted is immaterial. Eubank's arrest, therefore, did not contravene established Fourth Amendment principles so as to raise a valid constitutional claim against Defendant Wesseler. Because Wesseler had probable cause to arrest, Plaintiff cannot establish the violation of a constitutional right, failing the first prong of the qualified immunity analysis.

ii.   **Alternatively, Wesseler is entitled to qualified immunity because he could reasonably believe Plaintiff's right to be free from arrest in these circumstances was not clearly established.**

For the sake of completeness, the Court assumes *arguendo* that Wesseler did not have probable cause to arrest Plaintiff, and thus, moves to the second and third steps of the qualified immunity analysis. *Jones v. Byrnes*, 585 F.3d 971, 978 (6th Cir. 2009). At this point, the Court considers whether Plaintiff's right to be free from wrongful arrest was so

clearly established that Officer Wesseler should have known it. *Kennedy*, 635 F.3d at 214.

This "clearly established" inquiry considers "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Fettes v. Hendershot*, 375 F. App'x 528, 531 (6th Cir. 2010) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

In the context of a wrongful arrest, "an arresting agent is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent." *Kennedy*, 635 F.3d at 214 (quoting *Harris*, 513 F.3d at 511). In other words, Wesseler is entitled to qualified immunity if, after viewing the facts favorably to Plaintiff, he *arguably* had probable cause to arrest. *Jeffers v. Heavrin*, 10 F.3d 380, 381-82 (6th Cir. 1993). By contrast, for Plaintiff to defeat the application of qualified immunity, his right "must have been clearly established in a . . . particularized . . . sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Kennedy*, 635 F.3d at 214 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (internal quotations omitted). "General statements of the law are not inherently incapable of giving fair and clear warning," so long as the unlawfulness of Defendant Officers' actions were apparent. *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 740-41 (2002)).

"In the context of qualified immunity, preexisting, clearly established law refers to 'binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point.'" *Kennedy*, 635 F.3d at 214-15 (quoting *Holzemer v. City of Memphis*, 621 F.3d 512, 527 (6th Cir. 2010)). The Sixth Circuit has expressly held that "[a] person who has been the victim of an unlawful arrest or wrongful seizure under the

20

color of law has a claim based on the Fourth Amendment." *Brooks*, 577 F.3d at 706. Plaintiff concludes that Officer Wesseler fails the second step of the qualified immunity inquiry because the right of an arrestee to be free from a wrongful arrest is a clearly established right. (Doc. # 17 at 16). The Court agrees with Plaintiff's basic statement of law, but observes that is unhelpful here. The question is whether Plaintiff's right to be free from arrest *given the facts of this case* is clearly established, such that a reasonable officer would know that he does not have probable cause to arrest Plaintiff.

To illustrate the unreasonableness of Officer Wesseler's decision to arrest, the Complaint alleges that the back-up officer at the scene made known to Plaintiff—while placing him in the back of the police cruiser—that he did not think Plaintiff should be arrested, but that Officer Wesseler was insisting on it. (Compl. ¶ 41). This fact is not as damaging as Plaintiff believes it to be for two reasons: (1) the back-up officer was not present during Wesseler's interview of Geri and therefore he did not possess the same knowledge as Officer Wesseler at the time of arrest; and (2) the Supreme Court has made clear that "if officers of reasonable competence could disagree on [whether probable cause exists], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Jolley v. Harvell*, 254 F. App'x 483, 489 (6th Cir. 2007).

The police report indicates that Officer Wesseler interviewed Geri at the Quick Mart after which she requested that her husband be arrested. (Doc. # 11, Ex. A). Officer Wesseler then called for back-up and responded to Eubank's residence to effect arrest. Based on the facts as alleged, the back-up officer was simply not privy to the facts that informed Officer Wesseler's probable cause determination. Although the back-up officer may have believed that probable cause was lacking, his subjective opinion is irrelevant

21

given his complete lack of knowledge concerning the facts and circumstances that readily informed Wesseler's decision to arrest. Moreover, even if the back-up officer were privy to such facts and circumstances, where two competent officers could reasonably disagree as to whether probable cause exists, an officer is entitled to immunity. Officer Wesseler's conduct was well within the realm of that reasonably expected from a peace officer responding to a domestic violence complaint after interviewing the alleged victim and finding no reason to doubt her credibility.[3]

The Covington Police Department's General Order Number 41.3 pertaining to domestic violence lends further support that Wesseler's acted reasonably in believing the arrest was lawful. *See Leisure*, 267 F. Supp. 2d at 852 n.1 (After judicially noticing the city's police procedure manual the court explained it will "refer to such policy because in the second stage of the qualified immunity analysis the Court must consider the conduct of a reasonable officer. A reasonable officer would be acutely aware of the formal policies in the City's Police Procedure Manual."). Through enactment of this Order, it is the longstanding policy of the Covington Police Department to "effect arrest as the preferred response to domestic violence crime" as is appropriate under the arrest authority provided by the Kentucky Revised Statutes. Under the KRS, an officer may arrest without a warrant when her or she "has probable cause to believe that the person has intentionally or wantonly caused physical injury to a family member or member of an unmarried couple."

---

[3]Both parties make much of the trial testimony from Mr. Eubank's bench trial on the domestic violence charge, however, this information is immaterial for purposes of determining whether, *at the time of arrest*, probable cause existed. Probable cause is assessed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). A subsequent acquittal of the initial crime charged, moreover, is not alone sufficient to establish the lack of probable cause.

Ky. Rev. Stat. § 431.005. As defined by this Order, "probable cause means the officer must have a reasonable ground to believe that the person arrested has committed the crime. 'Reasonable Ground' means more than simple suspicion or a hunch. The officer must have concrete facts *or reliable information* giving him a reasonable belief that the suspect committed the crime." (Doc. # 11, Ex. D) (emphasis added).

Based on the policies established for Covington police officers, Officer Wesseler acted in an objectively reasonable manner. Its officers are trained to give domestic violence complaints "high priority" and to effect arrest when they believe probable cause exists to do so. The policy further states that reliable information is enough to produce a reasonable ground to believe that the suspect committed a crime. As discussed, Wesseler received credible information that a domestic violence crime was perpetrated by Plaintiff Eubank. He then responded in accordance with department policy and effected arrest. Officer Wesseler's conduct was consistent with CPD's General Order 41.3. Plaintiff has simply failed to meet his burden, requiring him to establish that *no reasonable officer* in Wesseler's position would have believed the arrest was supported by probable cause.

Although Plaintiff's Complaint contains 173 paragraphs, the document itself contains precious little factual support for the theory that Defendant Wesseler lacked probable cause to arrest Plaintiff Eubank. The vast majority of the Complaint instead contains sordid details of the Eubanks' marriage; information that is completely immaterial to Officer Wesseler's probable cause determination *at the time of arrest*. Because Plaintiff cannot establish that Wesseler lacked probable cause and violated his constitutional right to be free from wrongful arrest, and because Wesseler's arrest of Plaintiff was objectively reasonable even *if* his probable cause determination was erroneous, Officer Wessler is

entitled to qualified immunity.

### 3. Malicious Prosecution

Against Officer Wesseler, Plaintiff also raises a federal claim for malicious prosecution. The Sixth Circuit Court of Appeals has acknowledged the viability of a federal malicious prosecution claim brought pursuant to 42 U.S.C. § 1983, but had not identified the specific elements of such a claim until its recent decision in *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010). To sustain a federal malicious prosecution claim the plaintiff must show: (1) a criminal prosecution was initiated against the plaintiff and it was the defendant that made, influenced or participated in the decision to prosecute; (2) a lack of probable cause; (3) he suffered a "deprivation of liberty" beyond the arrest or seizure as a result of the legal proceeding; and (4) the criminal proceeding must have been resolved in defendant's (i.e. Plaintiff in this case) favor. *Id.* at 308-09.

Like wrongful arrest, a federal malicious prosecution claim requires a plaintiff to establish the absence of probable cause. *Sykes*, 625 F.3d at 308; *Voyticky* , 412 F.3d at 677. Because Plaintiff cannot establish that Officer Wesseler lacked probable cause at the time of his arrest, he fails to state a claim for malicious prosecution and is further entitled to qualified immunity on this claim. *See Stemler v. City of Florence*, 126 F.3d 856, 871-72 (6th Cir. 1997) (existence of probable cause foreclosed not only plaintiff's false arrest claim, but also her federal malicious prosecution claim).

### C. State Law Claims

In addition to alleging federal constitutional injury, Plaintiff asserts a number of claims arising under state law. However, as the Court has dismissed Plaintiff's federal constitutional claims, it need not address the merits of dismissal with respect to Plaintiff's

state-law claims. "Under 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. If the federal claims are dismissed before trial, the state claims generally should be dismissed as well." *Brooks*, 577 at 709 (quoting *Woinicz v. Davis*, 80 F. App'x 382, 384-85 (6th Cir. 2003)); *see, e.g., Harper v. AutoAlliance Int'l Inc.*, 392 F.3d 195, 210 (6th Cir. 2004); *Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed.").

Because Plaintiff's federal claims against Dennis Wesseler have been dismissed, and the parties' stipulated to dismissal of the federal claim against Geri Eubank, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims against both defendants.[4] *See* 28 U.S.C. § 1367(c)(3).

### III. CONCLUSION

Because Defendant Wesseler is entitled to qualified immunity, and because Plaintiff's federal claims against him fail as a matter of law, these claims shall be dismissed with prejudice. The Court declines to exercise jurisdiction over all remaining state law claims against Defendant Wesseler and Defendant Geri Eubank.

---

[4] The nature of relief sought by Geri Eubank in her motion to dismiss makes clear that declining supplemental jurisdiction is appropriate. In her motion, Geri—and counsel at oral argument—argues that she is entitled to absolute immunity in filing a complaint of domestic violence pursuant to Kentucky Revised Statute § 209A.050. The absence of Kentucky case law interpreting the scope of immunity contemplated under the statute underscores the Court's decision to decline supplemental jurisdiction over Plaintiff's remaining state law claims against Geri. *See* 28 U.S.C. § 1367(c)(1) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the claim raises a novel . . . issue of State law.").

For the reasons state herein, **IT IS ORDERED** that:

(1)    Defendant Geri Eubank's Motion to Dismiss (Doc. # 10) is hereby **GRANTED**;

(2)    Defendant Dennis Wesseler's Motion to Dismiss (Doc. # 11) is hereby **GRANTED**;

(3)    Plaintiffs' federal claims are hereby **DISMISSED WITH PREJUDICE**;

(4)    the Court declines to exercise supplemental jurisdiction; therefore, the state-law claims against Defendant Dennis Wesseler and Defendant Geri Eubank are hereby **DISMISSED WITHOUT PREJUDICE**;

(5)    this case is hereby **STRICKEN** from the active docket of this Court; and

(6)    This is a **FINAL** and **APPEALABLE** Order.

This 19th day August, 2011.

Signed By:

*David L. Bunning*    DB

United States District Judge

G:\DATA\Opinions\Covington\2010\2-10-210 MOO granting MTDs.wpd